UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DEANNA CLOTFELTER, THE DEANNA
CLOTFELTER REVOCABLE LIVING
TRUST, CABOT CREEKSIDE 18, LLC, a
Delaware limited liability company,

Plaintiffs,

-vs-                                                                    Case No.  5:10-cv-235-Oc-10GRJ

CABOT INVESTMENT PROPERTIES,
LLC, a Massachusetts limited liability
company, CABOT CREEKSIDE
ACQUISITION LLC, a Delaware limited
liability company, CARLTON P. CABOT,
TIMOTHY F. KROLL,

Defendants.
_____

## **O R D E R**

The Plaintiffs, investors in a shopping center located in Lawrenceville, Georgia, have

filed a four-count Complaint against the Defendants, the entities who promoted and

sponsored the shopping center investment, for violations of Florida and Georgia's

securities laws, a common law claim for negligent misrepresentation, and a claim for

declaratory relief (Doc. 22).  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

The case is presently before the Court for consideration of the Defendants' Motion

to Dismiss and Compel Arbitration (Doc. 5).  The Plaintiffs have filed a response in

opposition (Doc. 8), and both sides have filed several supplemental briefs (Docs. 9, 11, 16,

29, 33).  The motion is therefore ripe for disposition.  Upon due consideration, and for the

reasons discussed below, the Court finds that the Defendants' motion to dismiss is due to be granted.

## Factual Allegations

### I.      The Parties

Plaintiff Deanna Clotfelter is a 67-year old mother and grandmother with a high school education who has lived in Florida since 1962.  She currently resides in Ocala, Florida.   Ms. Clotfelter is the Trustee of Plaintiff, The Deanna Clotfelter Revocable Living Trust (the "Trust").  Through the Trust, Ms. Clotfelter owned a three-tenant shopping center in Maitland, Florida.  Ms. Clotfelter sold the shopping center in 2007 and sought to invest the sale proceeds in a manner which would generate steady monthly income on which she could live in her retirement.

Defendant Cabot Investment Properties, LLC ("Cabot Investment") is a Massachusetts limited liability company with its principal place of business in Boston, Massachusetts.  Cabot Investment promotes itself as a provider of investment opportunities that generate monthly income and defer capital gains tax (otherwise known as "Section 1031" investments).  The members of Cabot Investment are Defendants Carlton P. Cabot, a Massachusetts citizen, and Timothy F. Kroll, a New York citizen.  Mr. Cabot is also the Chief Executive Officer and President of Cabot Investment, and Mr. Kroll is the Cabot Investment's Chief Operating Officer.

Defendant Cabot Creekside Acquisition LLC ("Cabot Acquisition") is a Delaware limited liability company and wholly owned subsidiary of Cabot Investment.   Cabot Acquisition is the purchasing party to a contract of sale for a retail shopping center located in Lawrenceville, Georgia, the Village Shops at Creekside ("Village Shops").

## II.    The Village Shops Investment

In May, 2007, the Defendants presented to Ms. Clotfelter an opportunity to invest as a tenant-in-common in the Village Shops.  The Defendants represented that the Village Shops was 99.2% leased to 55 tenants, that it was extremely well located with four unique ingress points, that the Defendants had extensive experience in these types of investments, and that the Village Shops would provide investors with a stable cash flow for the first five (5) years.   Ms. Clotfelter relied on these representations and decided to invest in the Village Shops.

As part of the investment, Cabot Acquisition formed 30 single-member Delaware limited liability companies through which each investor holds its tenant-in-common interest in the Village Shops.  Ms. Clotfelter and her Trust hold their interest in the Village Shops through Plaintiff Cabot Creekside 18, LLC ("Cabot Creekside").

On June 27, 2007, Ms. Clotfelter, as trustee of the Trust, invested $500,000 in the Village Shops.  She, along with 29 other investors, invested a total of $17.5 million and assumed joint and several liability for a $39.5 million mortgage on the shopping center. The Defendants took fees and compensation of $3.14 million, and the investors were

3

collectively charged a $350,000 "Marketing and Due Diligence" fee.  The investors, along with another Cabot-controlled entity, Cabot Creekside LeaseCo, LLC, ("Cabot LeaseCo") entered into a 20-year master lease under which Cabot LeaseCo leases the Village Shops from the investors and sub-leases retail space to tenants.

As part of the investing agreements, the Defendants agreed to pay the investors, collectively, distributions totaling $102,083 per month for the first year and increasing by specified amounts each year thereafter, for the life of the 20-year master lease.  From July 2007 through September 2008, the Defendants paid their monthly distributions to Ms. Clotfelter and the other investors.  The Defendants ceased paying any distributions in October 2008.  This lawsuit followed.

## III.   The Contracts

At the time the Plaintiffs invested in the Village Shops, Ms. Clotfelter, in her role as trustee of the Trust, signed five (5) contracts.  Each contract is also signed by Timothy Kroll in his role as Chief Operating Officer of Cabot Investment, on behalf of either Cabot Acquisition or Cabot Creekside.[1]

The first contract is a Purchase Agreement and Escrow Instructions contract ("Purchase Agreement"), through which the Plaintiffs obtained an undivided 2.8571%

---

[1]The Parties agree that regardless of which entity signed each contract, to the extent the arbitration provision is valid and enforceable, it would be enforceable as to all Parties in this case. The Defendants also have not challenged personal jurisdiction.

4

interest in the Village Shops (Doc. 9-1, Ex. A).[2]  The Plaintiffs also entered into a Tenants in Common Agreement, a Consulting Agreement, a Call Agreement, and an Investment Acknowledgment and Agreement (Doc. 9-1, Exs. B-E).  In addition, Ms. Clotfelter provided the Defendants with a Purchaser Information Form in which she represented herself as having 45 years experience as a realtor and investor, and a Borrower's/Principal Party's Financial Statement in which she stated she had just under $6 million in assets and over $1,125,000 invested in other tax free investments (Doc. 9-1, Exs. F-G).

The Purchase Agreement contains an "Arbitration of Disputes" provision which provides as follows:

> 8.17.1.  <u>ALL CLAIMS SUBJECT TO ARBITRATION</u>.  ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR BREACH, TERMINATION, ENFORCEMENT INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE DETERMINED BY ARBITRATION IN BOSTON, MASSACHUSETTS, BEFORE A SOLE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY JAMS PURSUANT TO ITS STREAMLINED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.  THE ARBITRATOR SHALL, IN THE AWARD, ALLOCATE ALL OF THE COSTS OF THE ARBITRATION AND THE REASONABLE ATTORNEYS' FEES OF THE PREVAILING PARTY, AGAINST THE PARTY WHO DID NOT PREVAIL.

---

[2]Although the Plaintiffs have not attached to their Amended Complaint copies of the Agreements and related documents involved in the Village Shops investment, they are referenced throughout their Amended Complaint and are central to their claim for declaratory relief (Doc. 22, Count IV). The Court may therefore refer to these documents without converting the Defendants' motion to dismiss into a motion for summary judgment.  <u>See</u> <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F. 3d 1364, 1369 (11th Cir. 1997).

8.17.2 <u>ATTORNEYS' FEES</u>.  IF ARBITRATION, ACTION OR PROCEEDING IS INSTITUTED BETWEEN ALL OR ANY OF THE PARTIES TO THIS AGREEMENT ARISING FROM OR RELATED TO THIS AGREEMENT, THE PREVAILING PARTY OR PARTIES IN SUCH ARBITRATION, ACTION OR PROCEEDING SHALL BE ENTITLED TO RECOVER FROM THE NON-PREVAILING PARTY OR PARTIES ALL OF ITS OR THEIR COSTS OF THE ARBITRATION, ACTION OR PROCEEDING, INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS AS FIXED BY THE COURT OR ARBITRATOR THEREIN.

8.17.3 <u>WAIVER OF LEGAL RIGHTS</u>.  BY INITIALING IN THE SPACE BELOW, THE PARTIES ACKNOWLEDGE AND AGREE TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS ARTICLE DECIDED BY NEUTRAL ARBITRATION AS PROVIDED UNDER MASSACHUSETTS LAW AND THAT THEY ARE WAIVING ANY RIGHTS THEY MAY POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BY JURY TRIAL.  THE PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT THEY ARE WAIVING THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL EXCEPT TO THE EXTENT SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THIS SECTION 8.  IF EITHER PARTY REFUSES TO SUBMIT TO ARBITRATION AFTER EXECUTION OF THIS AGREEMENT AND INITIALING BELOW, SUCH PARTY MAY BE COMPELLED TO ARBITRATE PURSUANT TO THIS AGREEMENT. EACH PARTY'S AGREEMENT TO THIS SECTION 8 IS VOLUNTARY.  THE PARTIES HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THIS SECTION 8 TO NEUTRAL ARBITRATION.

(Doc. 9-1, Ex. A, pp. 10-11).  The other agreements contain similar arbitration provisions.

(<u>Id.</u>, Exs. B-E).

The Purchase Agreement also contains an "as-is" provision, which states that

BUYER REPRESENTS AND WARRANTS THAT IT IS RELYING SOLELY ON ITS OWN INSPECTIONS, INVESTIGATIONS AND ANALYSES OF THE PROPERTY IN ENTERING INTO THIS AGREEMENT AND BUYER IS NOT RELYING OIN ANY WAY ON ANY REPRESENTATIONS, STATEMENTS, AGREEMENTS, WARRANTIES, STUDIES, REPORTS, DESCRIPTIONS, GUIDELINES OR OTHER INFORMATION OR MATERIAL FURNISHED BY

SELLER OR ITS REPRESENTATIVES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, OF ANY NATURE WHATSOEVER REGARDING ANY SUCH MATTERS AND IS BUYING BUYER'S INTEREST IN AN "AS-IS" CONDITION.  BUYER IS A SOPHISTICATED, EXPERIENCED INVESTOR AND WILL RELY ENTIRELY ON ITS REVIEW OF THE PROPERTY. . . .

(Doc. 9-1, Ex. A, p. 5).

Lastly, the Purchase Agreement contains a severability clause, which reads:

8.15   Severability.  If any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, such fact shall in no way affect the validity or enforceability of the other portions of this Agreement.

(Doc. 9-1, Ex. A, p. 10).

In addition, the Investor Acknowledgment and Agreement contains representations that the Plaintiffs read and understood all relevant documents, including the Purchase Agreement, and that the Defendants "strongly urged" the Plaintiffs to retain an attorney with relevant experience to review the entire investment transaction and related documents. (Doc. 9-1, Ex. E, p. 1).

The Purchase Agreement, Tenants in Common Agreement, Consulting Agreement, and Call Agreement all contain choice of law provisions stating that each Agreement shall be construed and enforced in accordance with the laws of the Georgia (Doc. 9-1, Exs. A-D).  The Investor Acknowledgment and Agreement, however, states that arbitration of all disputes shall be governed by  Massachusetts law.  (Id., Ex. E).

## IV.    Procedural History

The Plaintiffs filed their Complaint in the Circuit Court, Fifth Judicial Circuit, in and for Marion County, Florida on February 9, 2010 (Doc. 2).  The Defendants removed the case to this Court on May 28, 2010 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 (Doc. 1).  On November 22, 2010 the Plaintiffs filed an Amended Complaint (Doc. 22), asserting four claims: (1) a claim for securities fraud under Fla. Stat. § 517.301 and/or Ga. Code Ann. § 10-5-58; (2) a claim for control person liability under Ga. Code Ann. § 10-5-58(g) against Cabot Investment, Mr. Cabot, and Mr. Kroll; (3) a common law claim of negligent misrepresentation; and (4) a claim for declaratory judgment that the arbitration provisions in each contract do not apply to the Plaintiff's lawsuit, and are unenforceable, invalid, and unconscionable.

The Plaintiffs contend that the Defendants made material misrepresentations and/or omissions at the time of the Plaintiffs' investment concerning:  (1) the value of Village Shops; (2) the financial stability of the shopping center's tenants (many of whom defaulted on their leases after June 2007); and (3) the fact that the Georgia Department of Transportation planned to condemn a portion of the Village Shops and eliminate the four-way main entrance to the shopping center.  The Plaintiffs further contend that these material misrepresentations induced them to invest in the Village Shops.  They seek rescission of "the investment" (Doc. 22, ¶ 116), return of the $500,000 plus interest, exemplary damages, declaratory relief, and attorneys' fees and costs.

## **Standard of Review**

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."  Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations.  Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## Discussion

The Defendants seek dismissal of this case and an order compelling arbitration based on the arbitration provision contained in the Purchase Agreement. The Plaintiffs argue both that the arbitration provision does not apply to the claims for relief asserted in the Amended Complaint, and that the arbitration clause is unenforceable.[3]

## I.    Governing Law

The Parties agree that the Village Shops investment and related contracts involve interstate commerce and therefore are governed by the Federal Arbitration Act ("FAA"). See 9 U.S.C. § 2; Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002). The Act promotes enforcement of written agreements to arbitrate "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. See also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255 (1989). "The FAA establishes a 'federal policy favoring arbitration ... requiring that [courts] rigorously enforce agreements to arbitrate.' " Davis v. Prudential Sec. Inc., 59 F. 3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337 (1987)).

---

[3]While the arbitration provisions exist in all five Agreements, the Defendants focus on the Purchase Agreement as that is the only contract under which the Plaintiffs seek relief. The Plaintiffs are careful in their Amended Complaint to request relief in the form of rescission of "the investment" without specifying the precise contract they seek rescission of. However, a review of the contracts conclusively establishes that only rescission of the Purchase Agreement would permit a return of the $500,000 investment to the Plaintiffs. See Doc. 9-1, Ex. A. It is therefore clear that the Purchase Agreement arbitration provision governs the present dispute.

"The question of whether a contract creates a duty for the parties to arbitrate the particular grievance is an issue for judicial determination." Senti v. Sanger Works Factory, Inc., No. 06-cv-1903-Orl-22DAB (ACC), 2007 WL 1174076, at *4 (M.D. Fla. 2007). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, ____ (1985). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, . . . .  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983).

Although the FAA governs questions of arbitrability, state law governs issues "concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9 (1987). See also 9 U.S.C. §2 (an agreement to arbitrate is valid, irrevocable, and enforceable "save upon such grounds as exist in law or in equity for the revocation of any contract."). Thus, defenses such as fraud, unconscionability and duress are governed by state law. Dale v. Comcast Corp., 498 F. 3d 1216, 1219 (11th Cir. 2007).

The application of the FAA to the question of whether the claims set forth in the Plaintiffs' Amended Complaint are encompassed by the arbitration provision is therefore without dispute.  The question of which state law should apply to determine whether the

arbitration provisions are valid and enforceable requires further discussion.  The Purchase Agreement contains a choice of law provision specifying that Georgia law shall be used to interpret and enforce the contract. (Doc. 9-1, Ex. A, ¶ 8.12).  However, "[i]n a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." Federated Rural Elec. Ins. Exchange v. R.D. Moody & Associates, Inc., 468 F.3d 1322, 1325 (11th Cir. 2006).

Generally, "Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So.2d 306, 311 (Fla. 2000).  The Florida Securities and Investor and Protection Act and the Georgia Uniform Securities Act both provide that it is unlawful in connection with the offer, sale, or purchase of any investment or security to defraud investors, and/or to make a misrepresentation of a material fact.  See Fla. Stat. §517.301(a) and Ga. Code Ann. §10-5-50.  Florida and Georgia also both recognize claims for negligent misrepresentation.  See Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334 (Fla. 1997); Smiley v. S&J Investments, Inc., 580 S.E. 2d 283 (Ga. Ct. App. 2003). And, with respect to determining whether an arbitration provision is unconscionable, Florida and Georgia employ similar legal analyses.  See Chapman v. King Motor Co. of South Florida, 833 So.2d 820 (Fla. 4th DCA 2002); NEC Technologies, Inc. v. Nelson, 478 S.E. 2d 769 (Ga. 1996).  Accordingly, the Court finds that honoring the Purchase Agreement's choice of law provision and applying Georgia law will not contravene a strong public policy in Florida, and the Plaintiffs have not identified any public policy that would be violated.

The Court will therefore apply the FAA to determine whether the Plaintiffs' claims are arbitrable, and Georgia law to determine whether the arbitration provision is enforceable.

## II.    **The Arbitrability of the Claims**

The Plaintiffs argue that their claims do not arise out of or relate to the Purchase Agreement, and therefore are not subject to arbitration.  However, the arbitration provision contained in the Purchase Agreement is extraordinarily broad and expressly states that it also covers disputes, claims or controversies "INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE."  (Doc. 9-1, Ex. A, ¶ 8.17.1).[4]  The Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc. v. Jackson, ___ U.S. ___, 130 S.Ct. 2772, 2777 (2010). See also Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452, 123 S.Ct. 2402, 2407 (2003); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-85, 123 S.Ct. 588, 591-93 (2002).  "[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership,

---

[4]The Court notes that the Plaintiffs omitted this key sentence from their initial Complaint (Doc. 2, ¶ 111), their Amended Complaint (Doc. 22, ¶¶ 134, 143), and their response in opposition (Doc. 8, p. 5).  The failure to include this key sentence from multiple pleadings strongly suggests that the omission was an intentional effort to mislead the Court, and exhibits a disappointing lack of professionalism.

432 F.3d 1327, 1332 (11th Cir. 2005) (quoting <u>Contec Corp. v. Remote Solution, Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005)).

Accordingly, the Court need not decide whether the Plaintiffs' claims in their Amended Complaint are arbitrable, as that question itself is subject to arbitration under the plain and express terms of the Purchase Agreement's arbitration provision.   If the arbitration provision is valid and enforceable, the Court must refer this case to arbitration.[5] <u>See</u> <u>Rent-A-Center</u>, 130 S.Ct. at 2778 (additional agreement to arbitrate gateway issues is valid "save upon such grounds as exist at law or in equity for the revocation of any contract.") (quoting 9 U.S.C. § 2).

## III.   The Arbitration Provision Conflicts With Georgia Law But is Severable

As discussed above, Georgia law applies to determine whether the arbitration provision is valid and enforceable.  The Plaintiffs first claim that the arbitration provision is void as contrary to Georgia's securities act and public policy – specifically the act's attorneys' fees provision.

The Georgia Uniform Securities Act authorizes a purchaser of a security to "maintain an action to recover the consideration paid for the security, less the amount of any income

---

[5]The Court is not persuaded by the Plaintiffs' argument that the Defendants waived any reliance on <u>Rent-A-Center</u> and related cases because the Defendants did not raise this issue until its supplemental reply brief.  The Defendants at all times quoted the entire arbitration provision, including the sentence relating to the scope and applicability of the arbitration provision.  <u>See</u> Doc. 5, p. 3.  The Defendants also have consistently argued that the Plaintiffs are required to arbitrate and that all of the Plaintiffs claims are arbitrable.  The Court does not find that the Defendants' arguments in their supplemental reply brief (which rely on a sentence the Plaintiffs repeatedly omitted from all submissions to this Court) are inconsistent or contradictory.

received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorney fees determined by the court . . . " Ga. Code Ann. § 10-5-58(b)(1).  The Georgia statute only mentions awarding attorneys fees to the purchaser who maintains an action; it does not expressly authorize attorneys fees to the "prevailing party" in general.   Moreover, the  statute prohibits a party from waiving compliance with any of part of Georgia's securities act.  Ga. Code. Ann. § 10-5-58(l).

In contrast, the Purchase Agreement's arbitration provision states that "the arbitrator shall, in the award, allocate all of the costs of the arbitration and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail."  (Doc. 9-1, Ex. A, ¶8.17.1; see also ¶ 8.17.2).  Because the arbitration provision provides for a mandatory assessment of attorneys fees and costs to the non-prevailing party, regardless of whether that party is the seller or purchaser, the Plaintiffs contend that the arbitration provision conflicts with Georgia's securities laws, seeks to waive an unwaivable statutory protection, and is therefore unenforceable.[6]

The Court agrees that the attorneys' fees and costs provision in the arbitration section of the Purchase Agreement conflicts with Georgia law and is unenforceable as to any claims under Georgia's securities act.  The arbitration provision effectively nullifies the one-way attorneys' fees provisions of Ga. Code Ann. § 10-5-58(b) by directing the

---

[6]The Plaintiffs attempt to make the same argument with respect to Florida's securities law. It is clear, however, that Florida's attorneys' fees provision is substantially similar to the fee provision in the arbitration clause in that both provide for an award of attorneys' fees to the prevailing party.  See Fla. Stat. § 517.211(6).

arbitrator to award fees and costs to the prevailing party, whether plaintiff or defendant. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337-38 (1987) (inherent conflict between arbitration and the statute's underlying purpose will override the FAA's mandate to enforce arbitration agreements).[7]

This is not the end of the analysis, however.  The Purchase Agreement contains a severability provision which states that "[i]f any term, covenant, condition, provision or agreement herein is held to be invalid, void or otherwise unenforceable . . . such fact shall in no way affect the validity or enforceability of the other portions of this Agreement." (Doc. 9-1, Ex. A, ¶ 8.15).  Under Georgia law, a contract may be either entire or severable. See Ga. Code Ann. § 13-1-8(a); Jackson v. Cintas Corp., 425 F.3d 1313, 1317 (11th Cir. 2005).  If a contract is severable, the part of the contract that is valid will not be invalidated by a separate part that is unenforceable, and the intent of the parties determines whether a contract is severable.  Ga. Code Ann. § 13-1-8(a), (b).

Georgia courts have held that "[t]he parties intent may be expressed directly, through a severability clause, or indirectly." Jackson, 425 F.3d at 1317 (quoting Vegesina v. Allied Informatics, Inc., 572 S.E.2d 51, 53 (Ga. Ct. App. 2002)) (internal citations omitted).  "A

---

[7]The Defendants point to Ga. Code Ann. § 10-5-58(c)(1) as proof that Georgia's securities laws also authorize an award of attorneys fees to a prevailing seller and therefore do not conflict with the arbitration clause.  What the Defendants fail to note, however, is that § 10-5-58(c)(1) only applies where a seller brings a claim for misrepresentation against a purchaser – *i.e.* the seller is the plaintiff.  Just like § 10-5-58(b), the section the Defendants point to does not authorize an award of attorneys fees and costs to a prevailing defendant.  Rather, § 10-5-58(b) and (c) are both one-way fees provisions, and both conflict with the Purchase Agreement's arbitration provision.

severability clause indicates the intent of the parties where the remainder of the contract can exist without the void portion." Capricorn Sys., Inc. v. Pednekar, 546 S.E.2d 554, 559 (Ga. App. Ct. 2001); see also Primerica Fin. Servs., Inc. v. Wise, 456 S.E.2d 631, 635 (1995).  Applying Georgia law to this case mandates a finding that the severability clause in the Purchase Agreement is enforceable, and clearly shows the intent of the Parties to permit the remainder of the Agreement to go forward in the event a term or condition is found invalid.

As such, the Court's finding that the prevailing party attorneys' fees provision in the Purchase Agreement's arbitration clause is unenforceable with respect to Georgia's securities laws does not invalidate the remainder of the arbitration provision.  See Jackson, 425 F.3d at 1317 ("Because severability clauses are enforceable under Georgia law and the FAA requires that arbitration agreements be treated no less favorably than other contracts under state law, the district court properly applied the severability clause to enforce the remainder of the arbitration agreement.").  See also Primerica Financial Services, Inc. v. Wise, 456 S.E. 2d 631, 635 (Ga. App. Ct. 1995) (affirming trial court's severance of overreaching language in arbitration agreement and compelling arbitration under the remaining provisions).

The Court will therefore enforce the Purchase Agreement's arbitration provision with one exception – the language providing for an award of attorneys' fees to a prevailing party shall be severed to the extent it can be interpreted to award fees to a prevailing defendant for any claims asserted under the Georgia Uniform Securities Act.  Instead, all claims

brought under the Act shall be governed by the attorneys' fees provisions set forth in Ga. Code Ann. § 10-5-58.

## IV.    The Arbitration Provision Is Not Unconscionable

"Under Georgia law, an unconscionable contract is 'such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of.'" Caley v. Gulfstream Aerospace Corp., 428 F.3d 1357, 1378 (11th Cir. 2005) (quoting Hall v. Fruehauf Corp., 346 S.E.2d 582, 583 (Ga. App. Ct. 1986)).  The arbitration provision (absent the prevailing party attorneys' fees language for Georgia securities law claims) does not offend this standard.

"[T]he mere existence of an arbitration clause does not amount to unconscionability." Results Oriented, Inc. v. Crawford, 538 S.E. 2d 73, 81 (Ga. App. Ct. 2000).  Instead, Georgia applies a two-pronged analysis to determine whether a contract is unconscionable. A contract (or contract provision) is unconscionable if it is both procedurally and substantively unconscionable.  NEC Technologies v. Nelson, 478 S.E. 2d 769, 771-72 (1996).  See also Crawford v. Results Oriented, Inc., 548 S.E.2d 342, 343 (Ga. 2001) (affirming use of the two-pronged approach when analyzing arbitration clauses).

"Procedural unconscionability addresses the process of making the contract," and includes elements such as "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the

18

presence or absence of a meaningful choice." NEC Technologies, 478 S.E. 2d at 771-72. Substantive unconscionability "looks to the contract terms themselves," and focuses on matters "such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id. at 772.

In their Amended Complaint, the Plaintiffs allege that the arbitration clause is procedurally unconscionable because:  (1) it is a contract of adhesion; and (2) Ms. Clotfelter, the person who signed the Purchase Agreement on behalf of the Plaintiffs, was an unsophisticated investor with limited education who operated from a position of unequal bargaining power.  (Doc. 22, ¶¶ 164, 166, 168-171).   The fact that an arbitration contract may be one of adhesion does not automatically make it unenforceable under Georgia law. Crawford, 548 S.E.2d at 343 (citing Munoz v. Green Tree Financial Corp., 542 S.E.2d 360 (2001) (arbitration clause is not unconscionable as an adhesion contract)); see also Jackon v. Cintas Corp., Civil Action No. 1:03-CV-3104-JOF, 2004 WL 5545444 at * 3 (N.D. Ga. Sep. 29, 2004) ("Georgia law provides that when the contract terms are clear and unambiguous, they are to be followed even if they are contained in an adhesion contract.").

The Plaintiffs allege that Ms. Clotfelter was an unsophisticated investor with unequal bargaining power because she has a high school education – in comparison to Mr. Kroll's dual degrees from the University of Pennsylvania's Wharton School.  However, the Purchase Agreement clearly states that  Cabot Creekside "is a sophisticated, experienced investor and will rely entirely on its review of the property . . ." (Doc. 9-1, Ex. A, ¶ 7.2).  Ms.

Clotfelter also signed the Investment Acknowledgment and Agreement, which stated that she had "reviewed my financial position and have determined that this investment is suitable for me and that my concentration of assets in real estate is reasonable and warranted given my full financial situation and objectives."  (Id., Ex. E, p. 1).   This same document also expressly encouraged Ms. Clotfelter to retain a lawyer with respect to the investment.  Id.  Moreover, Ms. Clotfelter represented to the Defendants that at the time of the Village Shops investment she had personal assets approaching $6 million dollars, and over 45 years experience as a realtor and investor.  (Id., Exs. F-G).[8]

Given Ms. Clotfelter's representations, the Court cannot say that she was an unsophisticated investor such that her agreement to arbitrate is procedurally unconscionable.  And even if the Court were to make such a finding, it would not prove fatal to the arbitration clause, for in Georgia, "lack of sophistication or economic disadvantage of one attacking arbitration will not [alone] amount to unconscionability." Results Oriented, 538 S.E.2d at 81.

The Plaintiffs next allege that the arbitration clause is substantively unconscionable because: (1) there is a lack of mutuality among the Parties; (2) the costs of arbitrating

---

[8]With such a net worth, Ms. Clotfelter would qualify as an "accredited investor" under Rule 501 of the Securities and Exchange Commission.  See 17 C.F.R. § 230.501(a).  According to the SEC, an individual qualifies as an "accredited investor" if his or her "individual net worth . . . at the time of . . . purchase exceeds $1,000,000," § 230.501(a)(5), or if he or she has "an individual income in excess of $200,000 in each of the two most recent years . . . and has a reasonable expectation of reaching the same income level in the current year."  § 230.501(a)(6).  As an "accredited investor," Ms. Clotfelter would be permitted to invest in certain types of high risk investments, belying any claim of unsophistication.

through JAMS are excessive; (3) JAMS rules require the arbitrator to keep the proceedings and award confidential; and (4) the venue of the arbitration is unfair to the Plaintiffs.[9]  (Doc. 22, ¶¶ 172(a)-(e)).  None of these arguments have any merit.[10]

With respect to the alleged lack of mutuality, the Court has reviewed the Purchase Agreement and finds that the Defendants are not afforded any alternative methods of redress which are not available to the Plaintiffs.  Rather, both sides are required to litigate all disputes in arbitration.[11]  Moreover, this argument is without merit under Georgia law as the Plaintiffs signed the Purchase Agreement, acknowledged that they had read the contract and all its terms, and acknowledged that they were encouraged to seek the advice of counsel, thereby demonstrating their intent to be bound by all of their terms.  Saturna v. Bickley Construction Co., 555 S.E.2d 825 (Ga. App. Ct. 2001).  Under such circumstances,

---

[9]The Plaintiffs also argue that the arbitration provision in the Purchase Agreement conflicts with the arbitration provision listed in the Investment Acknowledgment and Agreement in that the former has a Georgia choice of law provision and the latter has a Massachusetts choice of law provision.  The Court notes, however, that the Plaintiffs have nowhere argued that the arbitration clauses are unconscionable under Massachusetts law and in fact urge the application of Georgia law on this point.  See Doc. 8, p. 17.  To the extent there is a question concerning which state's substantive law shall apply to the Plaintiffs' negligent misrepresentation claim (the only claim not brought under a specific state statute), that question shall be resolved by the arbitrator.

[10]The Plaintiffs again contend that the arbitration clause conflicts with Georgia's securities laws and is therefore substantively unconscionable.  The Court has addressed that argument and has severed the conflicting language.

[11]The Plaintiffs point to Section 6.1 of the Purchase Agreement, which permits the Defendants to retain the amount of the Plaintiffs' deposit as liquidated damages in the event the Plaintiffs default and escrow fails to close.  (Doc. 9-1, Ex. A, ¶ 6.1).  That provision does not provide the Defendants with the right to seek redress in a court of law, nor does it limit the right of either side to pursue other remedies through arbitration.  The Plaintiffs' reference to the Call Agreement is equally unavailing as that Agreement, including any claims for equitable relief, is also subject to a similar arbitration provision.  (Doc. 9-1, Ex. D).

an arbitration provision is not unconscionable in the event it lacks mutuality of remedy. Id.

at 827; Crawford v. Great American Cash Advance, Inc., 644 S.E.2d 522, 525 (Ga. App.

Ct. 2007); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1349, 1378 (11th Cir. 2005).[12]

   The Plaintiffs also have not established that the risk of having to bear the costs and

expenses of arbitration will, in fact, prohibit her from arbitrating this matter.  The Plaintiffs

will not be liable for any attorneys' fees under the Georgia securities act claims.  Ms.

Clotfelter's net worth is near $6 million, making it highly unlikely that she will forego

arbitration, particularly in light of the fact that she seeks recovery in excess of $500,000.

Moreover, "the mere possibility that [the Plaintiffs] could be saddled with prohibitive costs

is too speculative to justify the invalidation of [an arbitration] agreement." Cash In Advance

of Florida v. Jolley, 612 S.E. 2d 101, 103 (Ga. App. Ct. 2005); see also Green Tree

Financial Corp., 531 U.S. at 91, 121 S.Ct. at 522.

   The Plaintiffs' last two arguments warrant little discussion.  The Court has found no

decisional authority in Georgia suggesting that confidentiality requirements in arbitration

are unconscionable.    Rather, the Supreme Court has recently noted, in dicta, the

"presumption of privacy and confidentiality that applies in many bilateral arbitrations." Stolt-

Nielsen S.A. v. AnimalFeeds International Corp., ___ S.Ct. ___, 130 S.Ct. 1758, 1776

(2010).  The Court also does not believe that the selection of Boston, Massachusetts as

---

   [12]The Court is limiting its analysis to the arbitration clauses themselves, for, if the Plaintiffs'
claims of lack of mutuality pertain to the contract as a whole "then those issues should be resolved
in arbitration."  Benoay v. Prudential-Bache Secs., Inc., 805 F.2d 1437, 1441 (11th Cir. 1986)
(citations omitted).

the venue renders the arbitration clause unconscionable, regardless of how "well-known" the Plaintiffs contend Mr. Cabot is, and the Plaintiffs have not presented any legal authority to the contrary. <u>Cf.</u> <u>Roney & Co. v. Goren</u>, 875 F. 2d 1218 (6th Cir. 1989) ("A forum selection clause in an arbitration agreement, just like any other contract provision, is entitled to complete enforcement absent evidence that the contract was procured through fraud or excessive economic power."). The Plaintiffs also have not explained how the Court can entertain a speculative attack on the partiality of arbitrators before arbitration has even commenced.

In sum, the Court finds that the arbitration provision is neither procedurally nor substantively unconscionable under Georgia law. The arbitration provision, with the exception of the prevailing party attorneys' fees language as it pertains to claims under the Georgia Uniform Securities Act, is valid and enforceable in this case.

### <u>Conclusion</u>

Accordingly, upon due consideration, the Defendant's Motion to Dismiss and Compel Arbitration (Doc. 5) is GRANTED. This case shall be arbitrated pursuant to the arbitration provision of the Purchase Agreement, with the proviso that the Georgia Uniform Securities Act's attorneys' fees provisions set forth in Ga. Code Ann. § 10-5-58 shall apply to all claims under the Act.

Because this case will now be dormant, the Clerk is directed to terminate all pending motions, and administratively close the file, subject to the right of any Party to move to

reopen this case upon the conclusion of all arbitration proceedings, or for other good cause shown.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 29th day of March, 2011.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record